GERRY DALE; and                          )
PATRICIA DALE in the name of             )
the UNITED STATES GOVERNMENT             )
pursuant to the False Claims Act,)
31 U.S.C. § 3729 et seq;                 )          Civil Action
the STATE OF DELAWARE;                   )          No. 06-cv-04747
the DISTRICT OF COLUMBIA;                )
the STATE OF FLORIDA;                    )
the STATE OF ILLINOIS;                   )
the STATE OF INDIANA;                    )
the STATE OF LOUISIANA;                  )
the STATE OF NEW YORK;                   )
the STATE OF TENNESSEE; and              )
the STATE OF VIRGINIA,                   )
                                         )
                Plaintiffs               )
                                         )
        vs.                              )
                                         )
ALAN ABESHAUS;                           )
ERIC ABESHAUS;                           )
MITCHELL KURLANDER; and                  )
DAVID DRILL,                             )
                                         )
                Defendants               )


                        *    *    *

APPEARANCES:

        ROSS BEGELMAN, ESQUIRE
        MARC MICHAEL ORLOW, ESQUIRE
        REGINA D. POSERINA, ESQUIRE
            On behalf of Plaintiffs

        RUDOLPH GARCIA, ESQUIRE
        JOSEPH R. LOVERDI, ESQUIRE[1]
            On behalf of Defendants Alan Abeshaus, Eric
            Abeshaus, and Mitchell Kurlander

---

[1]        On April 29, 2013 Attorney Loverdi withdrew his appearance on
behalf of defendants Alan Abeshaus, Eric Abeshaus, and Mitchell Kurlander.

ROBERT S. MORAFF, ESQUIRE
                    WILLIAM R. HINCHMAN, ESQUIRE[2]
                        On behalf of Defendant David Drill

                              *   *   *

                         **O P I N I O N**

JAMES KNOLL GARDNER,
United States District Judge

          This matter is before the court on The Abeshaus

Parties' Motion to Dismiss the Fourth Amended and Restated *Qui*

*Tam* Complaint, which motion was filed on September 19, 2012.[3]  On

September 19, 2012 Defendant David Drill's Joinder of the

Abeshaus Parties' Motion to Dismiss the Fourth Amended and

Restated *Qui Tam* Complaint was filed.

                    **SUMMARY OF DECISION**

          For the following reasons I grant in part and deny in

part defendants' motion to dismiss.[4]

          Specifically, I grant defendants' motion to dismiss to

the extent it seeks dismissal of Count II because plaintiffs

have not alleged that the Attorney General for the State of

---

[2]       On Jan 2, 2013 Attorney Hinchman withdrew his appearance on
behalf for defendant David Drill.  Mr. Drill is now represented by Attorney
Moraff and J. Ryan Martinez, Esquire.

[3]       The "Abeshaus Parties" refer to defendants Alan Abeshaus, Eric
Abeshaus and Mitchell Kurlander.  The Abeshaus Parties' motion to dismiss was
accompanied by the Memorandum of Law in Support of the Abeshaus Parties'
Motion to Dismiss the Fourth Amended and Restated *Qui Tam* Complaint and
Exhibits A through E to the memorandum.

[4]       Because defendant Drill adopted the arguments set forth in the
Abeshaus Parties' motion to dismiss, I refer to the Abeshaus Parties' motion
to dismiss and defendant Drill's joinder of that motion collectively as
"defendants' motion to dismiss".

Delaware issued a written determination that plaintiffs' claim under the Delaware False Claims and Reporting Act was supported by substantial evidence. Accordingly, Count II of plaintiffs' Fourth Amended Complaint[5] is dismissed with prejudice.

However, defendants' motion to dismiss is denied in all other respects. I conclude that plaintiffs have asserted a viable claim under the federal False Claims Act in Count I and have asserted viable claims under various state-law false claims acts in Counts III though IX.[6]

Specifically, I conclude that plaintiffs have alleged with sufficient particularity that defendants knowingly submitted false claims to the federal government and various state governments. Moreover, I conclude that plaintiffs' federal claim and state-law claims are not barred by the statute of limitations. Finally, I conclude that former defendants the Schutt Corporate Entities[7] are not necessary parties under Rule 19 of the Federal Rules of Civil Procedure.

---

[5] The complete title of plaintiffs' fourth amended complaint is "Fourth Amended and Restated Qui Tam Complaint pursuant to Title 31 U.S.C. Title 3729 et seq., and claims under the State False Claims Acts". I refer to plaintiffs' complaint as "Fourth Amended Complaint".

[6] In Counts III through IX plaintiffs assert claims under the false claims acts of the District of Columbia, Florida, Illinois, Indiana, Tennessee, Virginia and New York.

[7] The Schutt Corporate Entities refer to former defendants Schutt Holdings, Inc.; Schutt Sports, Inc.; and Circle Systems Group, Inc.

## JURISDICTION

Jurisdiction in this case is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331. This court has supplemental jurisdiction over plaintiff's pendent state-law claims. See 28 U.S.C. § 1367.

## VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to plaintiffs' claims occurred within this judicial district.

## PROCEDURAL HISTORY

This case was initiated on October 20, 2006 as a qui tam action under the federal False Claims Act ("FCA"), 31 U.S.C. § 3730.[8]

Pursuant to the FCA, such actions must not be served and must remain under seal for 60 days, during which time the United States has the opportunity to intervene, or seek an extension of time for which the complaint must remain under seal. See 31 U.S.C. § 3730(b).

This case was placed in civil suspense by the Clerk of Court and remained under seal until 2009. During this time,

---

[8] Plaintiffs initial complaint remains under seal. However, in their fourth amended complaint, which is the operative complaint, plaintiffs indicate that their initial complaint was filed October 20, 2006. See Fourth Amended Complaint, ¶ 26, n.5.

plaintiffs apparently filed a second amended complaint.[9]   On September 3, 2009 the United States' Notice of Election to Decline Intervention was filed.  By Order dated September 10, 2009 and filed September 15, 2009, I ordered that the case remain sealed for 60 days in order to provide the state parties with the opportunity to intervene.[10]   On September 22, 2009 plaintiffs filed their third amended complaint under seal.[11]

None of the state parties moved to intervene. Accordingly, by Order dated December 23, 2009 and filed December 29, 2009 I removed this case from civil suspense and ordered that the United States' notice declining intervention, my September 10, 2009 Order, and plaintiffs' third amended complaint, as well as all subsequent pleadings, be unsealed.

On January 12, 2010 plaintiffs' moved to file their third amended complaint *nunc pro tunc*.  By Order dated May 11,

---

[9]         This pleading remains sealed.

[10]         In their third amended complaint plaintiffs asserted claims as a relator on behalf of Delaware, the District of Columbia, Florida, Illinois, Indiana, Louisiana, New York, Tennessee, Virginia and New Jersey.

[11]         The thirteen-count third amended complaint asserted claims for violations of the federal False Claims Act (Count I), the federal False Claims Act as amended by the Fraud Enforcement and Recovery Act (Count II), unlawful retaliation under the Clean Air Act (Count III), unlawful retaliation under the federal False Claims Act (Count IV), and violations of the false claims acts of Delaware (Count V), the District of Columbia (Count VI), Florida (Count VII), Illinois (Count VIII), Indiana (Count IX), Tennessee (Count XI), Virginia (Count XII), New York (Count XIII) and New Jersey (Count XIV).

         Plaintiffs omitted Count X from the third amended complaint. Additionally, although plaintiffs named Louisiana as a plaintiff, they did not assert a claim for violations of Louisiana's false claims act in the third amended complaint.

2010 and filed May 12, 2010 I granted plaintiffs' motion and on May 20, 2010 plaintiffs' filed their third amended complaint.

Plaintiffs' fourteen-count third amended complaint asserted causes of action against the above-captioned defendants as well as former defendants Schutt Holdings, Inc.; Schutt Sports, Inc.; and Circle Systems Group, Inc. (collectively "the Schutt Corporate Entities").

On July 1, 2010 the Schutt Corporate Entities filed a motion to dismiss the third amended complaint. Also on July 1, 2010 the defendants Alan Abeshaus, Eric Abeshaus and Mitchell Kurlander (collectively "the Abeshaus Defendants") filed a motion to dismiss. On July 12, 2010 defendant David Drill filed a motion to dismiss.

On September 9, 2010, while the motions to dismiss were pending, Circle Systems Group, Inc. and Schutt Sports, Inc. filed a suggestion of bankruptcy under Chapter 11. On September 17, 2010 Schutt Holdings, Inc. also filed a suggestion of bankruptcy. Accordingly, by Order dated February 14, 2011 and filed February 15, 2011, this case was again placed in civil suspense.

Although the Schutt Corporate Entities bankruptcy proceedings remained pending, on June 13, 2011, I held oral

argument[12] on the Abeshaus' Defendants motion to dismiss and defendant Drill's motion to dismiss.[13]  At oral argument, as well as in their responses in opposition to defendants' motions to dismiss, plaintiffs requested leave to file a fourth amended complaint.[14]

These motions to dismiss remained pending while the Schutt Corporate Entities proceeded in bankruptcy.  However after the bankruptcy proceedings persisted for an excess of a year, by Order dated July 31, 2012 and filed August 1, 2012, I granted plaintiffs' request to file a fourth amended complaint and dismissed defendants' motions to dismiss plaintiffs' third amended complaint as moot.[15]

On August 15, 2012 plaintiffs filed their Fourth Amended Complaint, which alleges claims against defendants Alan Abeshaus, Eric Abeshaus, Mitchell Kurlander and David Drill.  In

---

[12]     See Transcript of Oral Argument on Motions to Dismiss Before the Honorable James Knoll Gardner[,] United States District Judge, June 13, 2011 ("N.T. June 13, 2011").

[13]     Pursuant to 11 U.S.C. § 362 the automatic stay applies to the debtor only and not necessarily the co-defendants of a debtor.

[14]     N.T. June 13, 2011, pages 30-31.  Plaintiffs indicated that they intended to file a motion to amend in order to name the individual defendants in Counts V-XIV, which in the third amended complaint asserted state-law claims against the Schutt Corporate Entities only.

[15]     In the absence of plaintiffs' objection, my July 31, 2012 Order also dismissed Count II of plaintiffs' third amended complaint with prejudice.  (See July 31, 2011 Order).

their Fourth Amended Complaint, plaintiffs do not assert claims against the Schutt Corporate Entities.

Count I of plaintiffs' Fourth Amended Complaint asserts a claim under the federal False Claims Act, 31 U.S.C. § 3729 (a). Within Count I plaintiff alleges four parts: (1) a violation of § 3729(a)(1) for presenting a false claim for payment or approval; (2) a violation of § 3729(a)(2) for making or using a record or statement to get a false claim paid; (3) a violation of § 3729(a)(3) for conspiring to defraud the Government by getting a false claim paid; and (4) a violation of § 3729(a)(7) which imposes liability on any person who "knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government."

Counts II through IX assert state-law claims for violations of the false claims acts of various states. Specifically, plaintiffs allege a claim under the Delaware False Claims and Reporting Act, 6 Del.C. §§ 1201 to 1211 (Count II), a claim under the District of Columbia False Claims Act, D.C.Code. §§ 2-308.13 to 2-308.21 (Count III)[16], a claim under the Florida False Claims Act, Fla.Stat. §§ 68.081 to 68.1051 (Count IV), a claim under the Illinois Whistle Blower Reward and Protection

---

[16] In the Fourth Amended Complaint, plaintiffs do not identify the District of Columbia as a plaintiff in the caption. However, Count III asserts a claim for violations of the District of Columbia's False Claims Act.

Act, 740 Ill.C.S. 175/1 to 175/8 (Count V), a claim under the Indiana False Claims and Whistle Blower Protection Act, Ind. Code §§ 5-11-5.5-1 to 5-11-5.5-18 (Count VI), a claim under the Tennessee False Claims Act, Tenn.C.A. §§ 71-5-181 to 71-5-199 (Count VII), a claim under Virginia's Fraud Against Taxpayer's Act, Va.Code.Ann. §§ 8.01-216.1 to 8.01-216.19 (Count VIII), and a claim under the New York False Claims Act, N.Y.State.Fin. §§ 187 to 194(Count IX).[17]

On September 10, 2012 the Abeshaus Defendants filed the within motion to dismiss. On September 19, 2012 defendant David Drill filed his motion to dismiss, which joined the Abeshaus Defendants' motion to dismiss. Defendants seek dismissal for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and in the alternative, for failure to join a necessary party pursuant to Rule 12(b)(7).

---

[17] Like the third amended complaint, in the Fourth Amended Complaint plaintiffs identify the State of Louisiana as a plaintiff in the caption. However, in their nine-count Fourth Amended Complaint plaintiffs do not assert any violations of the Louisiana false claims act.

Unlike the third amended complaint, the Fourth Amended Complaint does not assert claims for violations of the federal False Claims Act as amended by the Fraud Enforcement and Recovery Act, unlawful retaliation in violation of the Clean Air Act, unlawful retaliation in violation of the federal False Claims Act, or violations of the False Claims Act of New Jersey, which were identified as Counts II, III, IV and XIV, respectively in the third amended complaint.

## STANDARD OF REVIEW

## 12(b)(6) Failure to State a Claim

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." A Rule 12(b)(6) motion requires the court to examine the sufficiency of the complaint. <u>Conley v. Gibson</u>, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957) (abrogated in other respects by <u>Bell Atlantic Corporation v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Generally, in ruling on a motion to dismiss, the court relies on the complaint, attached exhibits, and matters of public record, including other judicial proceedings. <u>Sands v. McCormick</u>, 502 F.3d 263, 268 (3d Cir. 2008).

Except as provided in Federal Rule of Civil Procedure 9, a complaint is sufficient if it complies with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief". Rule 8(a)(2) does not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is

plausible on its face. <u>Twombly</u>, 550 U.S. at 570, 127 S.Ct. at 1974, 167 L.Ed.2d at 949.[18]

In determining whether a complaint is sufficient, the court must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief. <u>Fowler</u>, 578 F.3d at 210 <u>citing</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008).

Although "conclusory" or "bare-bones allegations" will not survive a motion to dismiss, <u>Fowler</u>, 578 F.3d at 210, a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits. <u>Phillips</u>, 515 F.3d at 231. Nonetheless, to survive a Rule 12(b)(6) motion, the complaint must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." <u>Id.</u> at 234 <u>quoting</u> <u>Twombly</u>, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940 (internal quotations omitted).

---

[18]    The Supreme Court's Opinion in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 684, 129 S.Ct. 1937, 1953, 173 L.Ed.2d 868, 887 (2009), states clearly that the "facial plausibility" pleading standard set forth in <u>Twombly</u> applies to all civil suits in the federal courts. <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009). This showing of facial plausibility then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged", and that plaintiff is entitled to relief. <u>Fowler</u>, 578 F.3d at 210 <u>quoting</u> <u>Iqbal</u>, 556 U.S. at 678, 129 S.Ct. at 1949, 173 L.Ed.2d at 884.

The court is required to conduct a two-part analysis when considering a Rule 12(b)(6) motion. First, the factual matters averred in the complaint, and any attached exhibits, should be separated from legal conclusions asserted. Fowler, 578 F.3d at 210. Any facts pled must be taken as true, and any legal conclusions asserted may be disregarded. Id. at 210-211.

Second, the court must determine whether those factual matters averred are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 211 quoting Iqbal, 556 U.S. at 679, 129 S.Ct. at 1950, 178 L.Ed.2d at 884.

Ultimately, this two-part analysis is "context-specific" and requires the court to draw on "its judicial experience and common sense" to determine if the facts pled in the complaint have "nudged [plaintiff's] claims" over the line from "[merely] conceivable [or possible] to plausible." Iqbal, 556 U.S. at 679-680, 129 S.Ct. at 1949-1951, 178 L.Ed.2d at 884-885.

A well-pled complaint may not be dismissed simply because "it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Twombly, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940-941 (internal quotations omitted).

## 12(b)(7) Failure to Join a Necessary Party

Federal Rule of Civil Procedure 12(b)(7), together with Federal Rule of Civil Procedure 19, allow for dismissal for failure to join a party "in whose absence the court cannot accord complete relief, or whose interest in the dispute is of such a nature that to proceed without their presence could prejudice that party or others." <u>Cummings v. Allstate Insurance, Co.</u>, 2012 U.S.Dist. LEXIS 84673, *8 (E.D.Pa. June 19, 2012) (Kelly, S.J.).

As with a 12(b)(6) motion, "[i]n reviewing a Rule 12(b)(7) motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences therefrom in favor of the non-moving party." <u>Pittsburgh Logistics Systems, Inc. v. C.R. England, Inc.</u>, 669 F.Supp.2d 613, 618 (W.D.Pa. 2009) <u>citing</u> <u>Jurimex Kommerz Transit G.M.B.H. v. Case Corp.</u>, 65 Fed.Appx. 803, 805 (3d Cir. 2003).

Additionally, the court may consider "relevant, extra-pleading evidence" in deciding a 12(b)(7) motion. <u>Cummings</u>, 2012 U.S.Dist. LEXIS 84673 at *8-9. The moving party can provide, and the court can consider, "affidavits of persons having knowledge of these interests as well as other relevant extra-pleading evidence." <u>See</u> <u>Collier</u>, 17 F.3d at 1293 <u>quoting</u>

5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* 1359, at 426-27 & n.12.

Ultimately, the moving party bears the burden of showing that the absent party should be joined under Rule 19. See Disabled in Action v. Southeastern Pennsylvania Transportation Authority, 635 F.3d 87, 97 (3d Cir. 2011).

## **FACTS**

Based upon the well-pled averments in plaintiff's Fourth Amended Complaint, which I must accept as true under the above standards of review, the pertinent facts are as follows.

Beginning on November 19, 1993 plaintiff Gerry Dale[19] was employed as a sports production manager by former defendant Circle Systems Group, Inc.[20]

Circle Systems Group, which was in the business of reconditioning athletic equipment, was owned by former defendant Schutt Holdings, Inc., which also owned the outstanding shares of stock of former defendant Schutt Sports, Inc.[21]

Defendant Alan Abeshaus is the former executive chairman of the board of directors for Circle Systems Group and

---

[19]      Patricia Dale also appears to have been employed by Schutt Corporate Entities as an administrative assistant (See Plaintiffs' Memorandum at page 2).  However, no discussion of Mrs. Dale's employment appears in the Fourth Amended Complaint.

[20]      Fourth Amended Complaint ¶, 1.

[21]      Id., ¶ 2.  As indicated above, Circle Systems Group, Schutt Holdings and Schutt Sports are collectively referred to as "the Schutt Corporate Entities".

was its "de facto" Chief Executive Officer.[22]  Defendant Eric

Abeshaus, son of Mr. Alan Abeshaus, is the former vice president

of manufacturing of Circle Systems Group, Inc.  Defendant David

Drill is the former president of Circle Systems, Inc.[23]

Defendant Mitchell Kurlander, son-in-law of Alan Abeshaus and

brother-in-law of Eric Abeshaus, is the former vice president

and Chief Financial Officer of Circle Systems Group.[24]

All defendants had unrestricted access to the details

and facts underlying Circle Systems Group's daily operations and

financial position.[25]

During his employment at Circle Systems Group,

Mr. Dale was affiliated with the reconditioning of all athletic

equipment.[26]

The reconditioning of athletic equipment is influenced

by the National Operating Committee on Standards for Athletic

Equipment ("NOCSAE").  NOCSAE is a nonprofit corporation formed

---

[22]     Fourth Amended Complaint, ¶ 5.

[23]     Id., ¶ 7.

[24]     Id, ¶ 8.

[25]     Id., ¶¶ 5-8.

[26]     Id, ¶¶ 1, 3.

        Specifically, Mr. Dale was affiliated with the reconditioning of
helmets and football shoulder pads, uniforms, tackling and blocking dummies,
pole vault and high jump pitch and covers, javelins, port fountains, sideline
communications equipment, pitching machines, baseball and softball bats and
bases, lacrosse shoulder pads and protective equipment, lacrosse and field
hockey sticks, field hockey goalie equipment, wall mats, and light pole and
goalpost protective covers.

in 1969 in response to a need for a performance test standard for football helmets.[27]

NOCSAE has developed helmet standards designed to reduce head injuries by establishing testing requirements for football helmets and other athletic equipment. These standards are adopted by various regulatory bodies for sports, including the National Collegiate Athletic Association and the National Federation of State High School Associations.[28]

The NOCSAE helmet standard requires testing football helmets to ensure they meet certain impact attenuation requirements. The NOCSAE test standard involves mounting a football helmet on a synthetic head model and dropping it a total of sixteen times onto a firm rubber pad. Shock measurements are taken to determine if the helmet meets the established severity index for concussion tolerance, thereby meeting the NOCSAE test requirements.[29]

Manufacturers test their own helmets as they are produced and licensed reconditioners test used helmets to the original standard applicable when the helmet is new. In order to comply with NOCSAE standards, reconditioners must test two

---

[27]     Fourth Amended Complaint, ¶ 12.

[28]     Id., ¶¶ 12-14.

[29]     Id, ¶¶ 15.

percent of each style of helmet from each customer after it has been reconditioned and before it has been recertified.[30]

Once a helmet passes the testing standards set forth by NOCSAE, the NOCSAE seal is affixed to a helmet to certify that the testing has been performed and the helmets meet the appropriate NOCSAE standards. However, helmets that do not meet NOCSAE's standards are rejected or marked unfit for use.[31]

The Schutt Corporate Entities are members of the National Athletic Equipment Reconditioners Association ("NAERA"). NAERA members are licensed by NOCSAE to re-certify helmets which have been reconditioned pursuant to NOCSAE standards.[32]

Between 2001 and 2008, at the direction of defendants the Schutt Corporate Entities contracted to recondition athletic equipment with federally funded schools and with public school districts in eleven different states and the District of Columbia.[33]

Specifically, with regards to federally funded schools, Schutt Corporate Entities contracted to recondition football helmets from 30 schools administered by the Department

---

[30]        Fourth Amended Complaint, ¶ 15.

[31]        Id., ¶¶ 15-17.

[32]        Id., ¶¶ 18-19.

[33]        Id., ¶¶ 26 and 29.

of Defense Education Activity ("DoDEA").[34]  Between 2001 and 2008 the Schutt Corporate Entities reconditioned an average of anywhere from 9 to 152 football helmets annually from each school, depending on the particular DoDEA school.[35]

Pursuant to Federal Acquisition Regulation policy, prior to the award of any federal contract or purchase agreement, contractors selling goods or services to DoDEA schools are required to register in the Central Contractor Registration site.  Registration requires contractors to make certain representations and certifications.[36]

In soliciting bids from contractors to recondition athletic equipment, DoDEA required that reconditioning services be performed "to ensure that all reconditioned helmets and shoulder pads provided under this contract are certified for use as prescribed by the National Operating Committee Standards for Athletic Equipment (NOCSAE)."[37]

---

[34]    DoDEA is funded within the Department of Defense and buys goods and services for a domestic and overseas school system. (Fourth Amended Complaint, ¶ 23).

[35]    Fourth Amended Complaint, ¶¶ 26 and 29.  Plaintiffs do not specify the precise number of helmets that the Schutt Corporate Entities reconditioned for each school each year between 2001 and 2008.  Instead, plaintiffs provide a list of the average number of helmets reconditioned each year between 2001 and 2008, which ranges from 9 to 152 helmets.  (See Id, ¶ 26).

[36]    Id, ¶ 25.

[37]    Id.

In addition to contracting with the DoDEA schools, the Schutt Corporate Entities contracted to recondition athletic equipment with public school districts in Delaware, the District of Columbia, Florida, Illinois, Indiana, Louisiana, Michigan, New York, Tennessee, Texas, Virginia and New Jersey.[38]

Each of the public school districts received Basic Education Funding provided by the state. This funding was used in part to repair and recondition athletic equipment.[39] The school districts mandated that, when soliciting bid offers for reconditioning athletic equipment, football helmets be recertified pursuant to NOCSAE standards.[40]

For example, in the Broward County School District in Florida a bid package from January 2009 states that "[n]o bid will be considered for reconditioning of helmets from any bidder

---

[38] Fourth Amended Complaint, ¶ 28. Like the federal schools, plaintiffs do not specify the precise number of helmets that the Schutt Corporate Entities reconditioned for each school district each year between 2001 and 2008. Instead, plaintiffs provide a list of the average number of helmets reconditioned each year between 2001 and 2008 for each state.

Specifically, between 2001 and 2008 on average the Schutt Corporate Entities reconditioned the following number of football helmets annually in each State: 3000 in Delaware; 4000 in the District of Columbia; 35,000 in Florida; 15,000 in Illinois; 10,000 in Indiana; 1500 in Louisiana; 30,000 in Michigan; 45,000 in New York; 10,000 in Tennessee; 25,000 in Texas; 35,000 in Virginia; and 150,000 in New Jersey.

Although plaintiffs allege that the Schutt Corporate Entities reconditioned athletic equipment for public school districts in Texas and New Jersey, in the Fourth Amended Complaint plaintiffs do not assert claims as relators on behalf of either Texas or New Jersey.

[39] Id., ¶ 27.

[40] Id., ¶ 28.

who does not have fully operational in their facility testing equipment approved by NOCSAE." Further, the Broward County School District required that "[a]ll NOCSAE approved helmets are to have recertification labels indicating the date and vendor name affixed to the helmet interior."[41]

Despite the requirements from the DoDEA schools and various public school districts, the Schutt Corporate Entities did not recondition football helmets in compliance with NOCSAE. Specifically, defendants did not test the minimum two percent of each style of helmet from each customer after the helmets were reconditioned. Additionally, contrary to NOCSAE requirements, defendants utilized equipment which was not made by the original manufacturer.[42]

Nevertheless, defendants affixed the NOCSAE seal to the reconditioned helmets, thereby certifying that that the helmet met NOCSAE standards. Moreover, defendants falsified their reports and test results to NOCSAE.[43]

In addition to falsely certifying compliance with NOCSAE standards, defendants did not obtain contracts with the schools through standard bidding practices. Rather, in at least

---

[41]        Fourth Amended Complaint, ¶ 28.

[42]        Id., ¶ 34.

[43]        Id., ¶¶ 34-35.

-20-

some instances, defendants used "phantom bids" to secure the contracts with the schools.[44]

Specifically, defendants created fictitious companies which defendants used to submit competing bids to individual schools and school districts. Pursuant to this scheme, defendants would submit two phantom bids from fictitious companies and one real bid from the Schutt Corporate Entities. This enabled the Schutt Corporate Entities to appear to be the low bidder in a competitive bidding process.[45]

In other instances, defendants submitted fictitious bids on behalf of actual companies without their knowledge, or provided a kick-back to actual companies that submitted fictitious bids in furtherance of defendants' scheme.[46]

Several New Jersey public school districts had knowledge of, and participated in, defendants' phantom bidding scheme, and awarded the Schutt Corporate Entities contracts despite knowledge of the uncompetitive nature of the bidding process.[47]

In addition to defendants' phantom bidding scheme, defendants obtained additional contracts with schools by

---

[44]     Fourth Amended Complaint, ¶¶ 38-39.

[45]     Id., ¶ 40-41.

[46]     Id., ¶ 41.

[47]     Id., ¶ 44.

obtaining bid identification numbers in states in which Schutt
Corporate Entities did not maintain an office.[48]

Specifically, between 2001 through 2003 defendants
used David Drill's address and "hooked a phone up" in his garage
with an answering machine to give the appearance that the Schutt
Corporate Entities maintained a New Jersey office.  This enabled
the Schutt Corporate Entities to bid on New Jersey school
district contracts.[49]

Between 2003 and 2008, defendants used the addresses
of two different office managers to create the false appearance
that the Schutt Corporate Entities maintained an office in New
Jersey in order to obtain bid identification numbers and bid on
contracts to recondition athletic equipment.[50]

However, even after the Schutt Corporate Entities
obtained contracts to recondition the athletic equipment from
various schools, defendants' dubious conduct did not cease.
Instead, defendants initiated a double-billing practice, in
which invoices and billing statements were sent to schools in
the same envelope in order to deceive schools and obtain double
payments.  After this practice proved effective at obtaining

---

[48]      Fourth Amended Complaint, ¶ 45.  Plaintiffs do not specify
whether defendants installed a new phone in defendant Drill's garage or
connected an answering machine to an existing phone in his garage.

[49]      Id.

[50]      Id.

double payments from school districts, defendants established a separate account for these second payments.[51]

Not only did the Schutt Corporate Entities double bill for reconditioned athletic equipment, but defendants also charged school districts for goods and services that the Schutt Corporate Entities did not deliver. For example, the Schutt Corporate Entities routinely added face masks and shoulder pad flaps to invoices, but never delivered those items, or did not deliver the quantity which was charged, to the schools.[52]

When schools paid for goods or services that were never provided by the Schutt Corporate Entities, defendants established a "slush fund" to keep account of the extra funds which they received. This slush fund was used by athletic directors and coaches to purchase new equipment that had not been approved by their school district, or used for personal use.[53]

In October 2008 defendants ceased directing the operations of the Schutt Corporate Entities. On December 22, 2008 defendant Drill was charged by a one count Information in United State District Court for the District of New Jersey with

---

[51]        Fourth Amended Complaint, ¶ 47.

[52]        Id., ¶ 48.

[53]        Id.

conspiracy and defrauding the United States government in violation of 18 U.S.C. § 371.[54]

On May 10, 2011 defendant Mitchell Kurlander and Alan Abeshaus were charged by a twenty-two count Indictment in United State District Court for the District of New Jersey with violations of 18 U.S.C. § 981(a)(1)(C), 1341, 1343, 1349 and 2, as well as violations of 28 U.S.C. § 2461.[55]

The charges set forth in the Information and Indictment arose from conduct similar to the factual allegations set forth in plaintiffs' Fourth Amended Complaint.

## CONTENTIONS OF THE PARTIES

### Contentions of Defendants

Defendants advance essentially three arguments in support of dismissal of Count I.  First, defendants contend that that plaintiffs have failed to state a claim under the federal False Claims Act because they have not pled with sufficient specificity as required by Rule 9 of the Federal Rules of Civil Procedure.  Specifically, defendants argue that plaintiffs have failed to allege the context of defendants' purported involvement in the submission of allegedly false claims and that plaintiffs have not identified any specific false claims to support their allegations.

---

[54]     See Exhibit E to plaintiffs' Fourth Amended Complaint.

[55]     See Exhibit F to plaintiffs' Fourth Amended Complaint.

Second, defendants contend that plaintiffs have failed
to allege with sufficient specificity that defendants' conduct
occurred within the applicable statute of limitations.
Defendants contend that plaintiffs' allegations do not establish
that any of defendants' allegedly unlawful conduct occurred
within the six year statute of limitations for claims under the
False Claims Act.  Defendants assert that because plaintiff did
not file their third amended complaint until May 20, 2010,
plaintiffs may not recover for any claims submitted prior to
May 20, 2004.

Moreover, defendants assert that their employment with
the Schutt Corporate Entities ceased in 2007[56] and therefore,
plaintiffs cannot recover for any false claims submitted after
defendants ceased managing the Schutt Corporate Entities.

Accordingly, defendants contend that because
plaintiffs generally allege that defendants submitted false
claims between 2001 and 2008, but have not identified any
specific false claim submitted, plaintiffs cannot establish that
defendants submitted a false claim within the applicable statute
of limitations during defendants' employment with the Schutt
Corporate Entities.

---

[56]        Defendants assert that Eric Abeshaus' employment with Schutt
Corporate Entities terminated in June 2007 and that Mr. Kurlander's
employment terminated in September 2007.

Third, defendants contend that, even if plaintiffs alleged that defendants' conduct occurred within the applicable statute of limitations, plaintiffs have failed to state a claim under the False Claims Act because the federal schools did not rely upon NOCSAE certification when awarding contracts and therefore defendants' purported misrepresentations were not material to being awarded various contracts with federal schools.

Further, defendants contend that NOCSAE standards do not mandate that two percent of all helmets be tested, and therefore placing the NOCSAE seal on reconditioned helmets was not improper, even if defendants did not test two percent of the football helmets after they were reconditioned.[57]

Defendants raise similar arguments to support dismissal of Counts II through IX. Defendants contend that plaintiffs have failed to allege that defendants submitted false claims under each state's false claims acts with sufficient specificity, and like plaintiffs' claim under the federal False Claims Act, defendants assert that each state's respective

---

[57]     In their reply brief in support of their motion to dismiss, defendants also contend that plaintiffs have failed to state a claim in Count I for a "reverse false claim" under 31 U.S.C. § 3729(a)(7). However, defendants did not raise this argument in their initial brief. Therefore, I decline to consider it. See Anspach v. City of Philadelphia, 503 F.3d 256, 259 n.1 (3d Cir. 2007) ("failure to raise an argument in one's opening brief waives it.").

statute of limitations bars all, or a portion of plaintiffs'
state-law claims.[58]

Further, like plaintiffs' claim under the federal
False Claims, defendants contend that NOCSAE certification was
not material to the state public school districts that awarded
the Schutt Corporate Entities the contracts to recondition
football helmets.

Accordingly, defendants assert that plaintiffs' Fourth
Amended Complaint should be dismissed in its entirety.

In the alternative, defendants assert that the Schutt
Corporate Entities are necessary parties and that plaintiffs
should be ordered to join the Schutt Corporate Entities pursuant
to Federal Rule of Civil Procedure 19.

### Contentions of Plaintiff

Plaintiffs contend that they have stated a claim under
the federal False Claims Act and each applicable state's false
claims acts.  Plaintiffs acknowledge that a heightened pleading
standard under Rule 9(b) of the Federal Rules of Civil Procedure
applies to claims under the False Claims Act.  However,
plaintiffs assert that they are not required to identify a
specific false claim submitted by defendants in order to state a
viable claim.  Plaintiffs assert that documents attached to

---

[58]     Defendants also contend that Count II, which asserts a claim
under the Delaware False Claims and Reporting Act, should be dismissed
because the Attorney General for the state of Delaware did not make a written
determination that plaintiffs' claim was supported by substantial evidence.

their Fourth Amended Complaint show that defendants submitted false claims in New Jersey and provide an indicia of reliability to support their allegations that defendants submitted false claims to the federal government and other states.

Plaintiffs also contend that the statute of limitations does not provide a basis for dismissal because it is not clear from the face of the complaint that plaintiffs' claims are barred by either the federal or state statutes of limitations.

Additionally, plaintiffs contend that they have alleged sufficiently that defendants' misrepresentations concerning NOCSAE-compliance were material to the federal and state schools because they provided an example of a bid solicitation from a DoDEA contract and from a public school district, both of which required NOCSAE certification.

Finally, plaintiffs assert that Rule 19 does not provide a basis for dismissal because the Schutt Corporate Entities remain in bankruptcy and therefore cannot be joined by plaintiffs. Plaintiffs assert that defendants may seek to join the Schutt Corporate Entities as third-party defendants, but that plaintiffs are not required to do so.

**DISCUSSION**

**Count I: Federal False Claims Act**

In Count I, plaintiffs assert a claim under the False Claims Act.

The federal False Claims Act ("FCA") prohibits the submission of false or fraudulent claims for payment to the United States. "The primary purpose of the FCA is to indemnify the government--through its restitutionary penalty provisions--against losses caused by a defendant's fraud." U.S. ex rel. Wilkins v. United Health Group, Inc., 659 F.3d 295, 308 (3d Cir. 2011).

As a means of enforcement, the FCA authorizes *qui tam* actions, by which a private individual, known as a relator, may bring a lawsuit on behalf of the government in exchange for the right to retain a portion of any resulting damages award. Foglia v. Renal Ventures Management, LLC., 830 F.Supp.2d 8, 15 (D.N.J. Nov. 23, 2011) citing Schindler Elevator Corporation v. U.S. ex rel. Kirk, __ U.S. __, __, 131 S.Ct. 1885, 1889, 179 L.Ed.2d 825 (2011).

When, as here, an action is brought by a private plaintiff, it is subject to a six-year statute of limitations, which accrues the date on which the false claim is submitted. See 31 U.S.C. § 3731(b).

-29-

Here, plaintiffs allege that defendants violated
31 U.S.C. § 3729(a)(1), (2), (3) and (7) [59].  Those sections of
the False Claims Act state that any person who:

> (1) knowingly presents, or causes to be
> presented, to an officer or employee of the
> United States Government or a member of the
> Armed Forces of the United States a false or
> fraudulent claim for payment or approval;

> (2) knowingly makes, uses, or causes to be made
> or used, a false record or statement to get
> a false or fraudulent claim paid or approved
> by the Government;

> (3) conspires to defraud the government by
> getting a false or fraudulent claim allowed
> or paid; [or]...

> (7) knowingly makes, uses, or causes to be made
> or used, a false record or statement to
> conceal, avoid, or decrease an obligation to
> pay or transmit money or property to the
> Government,

> is liable to the United States Government for a
> civil penalty of not less than $ 5,000 and not
> more than $ 10,000, plus 3 times the amount of
> damages which the Government sustains because of
> the act of that person....

31 U.S.C. § 3729(a).

To assert a claim under any of the four subsections of
the FCA, a "relator must allege that the defendant submitted a

---

[59]      In May 2009 Congress enacted the Fraud Enforcement and Recovery
Act ("FERA"), which amended 31 U.S.C. § 3729(a)(1) and (2).  With respect to
the changes to § 3729(a)(2), the amendment applied retroactively to "take
effect as if enacted on June 7, 2008".  <u>Hopper v. Solvav Pharmaceuticals,
Inc.</u>, 588 F.3d 1318, 1327 n.3 (11th Cir. 2009).

        Here, plaintiffs do not allege that defendants submitted any
false claims, or that any claims were pending, on or after June 7, 2008.
Accordingly, the parties do not contend that the pre-FERA version of the
False Claims Act is applicable to this case.

-30-

legally fraudulent or false claim." <u>Foglia</u>, 830 F.Supp.2d at 20.[60]

Because a claim under the FCA includes allegations of fraud, a plaintiff must meet the heightened pleading requirement of Federal Rule of Civil Procedure 9(b). <u>United States ex rel. Schmidt v. Zimmer, Inc.</u>, 386 F.3d 235, 242 n.9 (3d Cir. 2004) citing <u>United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.</u>, 149 F.3d 227, 234 (3d Cir 1998).[61]

Generally, the heightened standard of pleading requires specifying the time, place and substance of the

---

[60]     To state a claim under § 3729(a)(1), plaintiffs must show that (1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent. <u>U.S. ex rel. Schmidt v. Zimmer, Inc.</u>, 386 F.3d 235, 242 (3d Cir. 2004).

    A § 3729(a)(2) violation "requires a showing that the defendant made a false record or statement for the purpose of getting a false or fraudulent claim paid or approved by the Government." <u>Budike</u>, 897 F.Supp.2d at 317 n.22.

    A claim for conspiracy under § 3729(a)(3) requires the plaintiff to show that (1) the defendant conspired with one or more persons to get a false or fraudulent claim allowed or paid by the United States, and (2) that one or more conspirators performed any act to get a false or fraudulent claim allowed or paid. <u>U.S. ex rel. Atkinson v. Pennsylvania Shipbuilding Co.</u>, 255 F.Supp.2d 351, 371 (E.D.Pa. 2002) (Yohn, J.).

    To state a claim under § 3729(a)(7), which prohibits submitting a "reverse false claim", plaintiffs must allege "that the defendant made or used (or caused someone else to make or use) a false record in order to avoid or decrease an obligation to the federal government." <u>Schmidt</u>, 386 F.3d at 242. Additionally, a claim under § 3729(a)(7) requires showing that the defendant did not pay back to the government money or property that it was obligated to return. <u>Budike</u>, 897 F. Supp. 2d at 322-323.

[61]     Rule 9(b) states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). However, "[m]alice, intent, knowledge, and other condition of the mind of a person may be averred generally." <u>Id.</u>

defendant's alleged misconduct.  See U.S. ex rel. St. John

LaCorte v. SmithKline Beecham Clinical Labs., Inc., 149 F.3d

227, 234 (3d Cir. 1998).

Alternately, a plaintiff may "use an alternative means

of injecting precision and some measure of substantiation into

their allegations of fraud."  Rolo v. City Investing Co.

Liquidating Trust, 155 F.3d 644, 658 (3d Cir. 1998).[62]

Two categories of false claims are recognized under

the federal FCA: factually false claims and legally false

claims.  Wilkins, 659 F.3d at 295.

A claim is factually false when a government payee has

submitted an incorrect description of goods or services

provided, or a request for reimbursement for goods or services

never provided.  Foglia, 830 F.Supp.2d at 16.  A claim is

legally false when a government payee has "certified compliance

with a statute or regulation as a condition to government

---

[62]      Ultimately, in order to recover under the False Claims Act, a
plaintiff must "come to court with at least one claim in hand."  See U.S. ex
rel. Schmidt v. Zimmer, Inc., 2005 WL 1806502 (E.D.Pa. July 29, 2005)
(Robreno, J.) quoting U.S. ex rel. Quinn v. Omnicare, Inc., 382 F.3d 432, 440
(3d Cir. 2004).

However, the United States Court of Appeals for the Third Circuit
has never held that a plaintiff must identify representative examples of
false claims at the pleading stage in order to comply with the requirements
of Rule 9(b).  See U.S. ex rel. Wilkins v. United Health Group, Inc.,
659 F.3d 295, 308 (3d Cir. 2011).  Indeed, in Wilkins, the court explicitly
noted that the requirement to provide evidence of a specific a false claim,
as articulated in Quinn v. Omnicare, Inc., applied to summary judgment.

payment, yet knowingly failed to comply with such statute or regulation." Id.

The category of legally false claims is further divided into express false certifications and implied false certifications. Id. at *17. An express false certification occurs when a defendant falsely certifies that it is in compliance with regulations which are prerequisites to government payment in connection with the claim for payment of federal funds. Id. In contrast, an implied false certification occurs when a defendant seeks and makes a claim for payment from the government without disclosing that it violated regulations that affect defendant's eligibility for payment, thereby impliedly certifying that he is in compliance with all preconditions for payment. Id.

Under either an express or implied false certification theory, a plaintiff must show that compliance with the regulation which defendant violated was a "condition of payment" from the government. Id. "Conditions of payment" are distinguishable from "conditions of participation". Id. at *19. Conditions of participation are enforced through administrative mechanisms, while conditions of payment are those which, "if the government knew they were not being followed, might actually cause it to refuse payment." Id.

Here, the allegations in plaintiffs' Fourth Amended Complaint implicate both factually false and legally false claims. For example, plaintiffs allege that defendants initiated a double-billing practice, in which invoices and billing statements were sent to schools in the same envelope in order to deceive schools and obtain double payments, and that defendants billed schools for services they never provided.[63]

Additionally, plaintiffs allege that defendants certified that the Schutt Corporate Entities reconditioned football helmets in compliance with NOCSAE standards when in fact such standards had not been met.[64]

Here, drawing reasonable inferences in favor of plaintiffs, as I am required to do under the foregoing standard of review, I conclude that plaintiffs have provided sufficient factual allegations to state a claim under the FCA.

---

[63]     See Fourth Amended Complaint, ¶ 47. Such allegations appear to be based on a theory of submitting factually false claims. Plaintiffs do not expressly refer to "factually false claims" in their Fourth Amended Complaint or their brief in opposition to defendants' motion to dismiss. However, a subheading of plaintiffs' complaint is titled "Cases in Which Goods or Services Were Never Provided".

[64]     Plaintiffs contend that by making such assertions defendants submitted "legally false claims" under the FCA under both express and implied false certification theories.

Specifically, plaintiffs contend that by affixing the NOCSAE seal to each helmet, defendants expressly certified compliance with NOCSAE standards and guidelines. (Fourth Amended Complaint, ¶ 34). Likewise, plaintiffs contend that by accepting competitive bids to recondition equipment, defendants impliedly certified that that they had complied with NOCSAE standards. (Id., ¶ 37).

Defendants contend that plaintiffs have failed to allege with specificity what involvement defendants had in making the allegedly false claims to the DoDEA schools and have failed to provide an example of a particular false claim submitted by defendants.

However, plaintiffs allege that defendants had unrestricted access to the details and facts underlying Circle Systems Group's daily operations and were the decision-makers at the Schutt Corporate Entities who caused the Schutt Corporate Entities to falsely represent that equipment was reconditioned in accordance with NOCSAE standards, even though such standards had not been met.[65]

Further, although plaintiffs do not provide specific representative samples of false claims submitted by defendants, such proof is not required at the pleading stage. See U.S. ex rel. Wilkins, 659 F.3d at 308. Moreover, plaintiffs use "alternative means of injecting precision...and substantiation into their allegations of fraud." Rolo, 155 F.3d at 658. For example, plaintiffs allege that the Schutt Corporate Entities routinely added goods and services to invoices that the schools

---

[65]     Fourth Amended Complaint, ¶ 31.  Defendants note that plaintiffs' allegations do not refer to defendant Eric Abeshaus specifically after identifying him as a party.  However, plaintiffs identify Eric Abeshaus as one of the "Individual Management Defendants", who constitute the remaining defendants in this case.  Plaintiffs refer to the conduct of the Individual Management Defendants throughout their Fourth Amended Complaint.

never ordered and that defendants established a "slush fund" to keep an account of the money the Scutt Corporate Entities obtained for goods and services it did not provide.[66]

Additionally, plaintiffs identify the specific DoDEA schools that the Schutt Corporate Entities contracted to recondition football helmets with, and the average number of helmets that the Schutt Corporate Entities reconditioned each year for each school between 2001 and 2008. While plaintiffs do not provide a specific invoice for reconditioned football helmets submitted to the federal government, plaintiffs' allegations are sufficient to provide an indicia of reliability that defendants submitted claims for payments for reconditioning football helmets, despite failing to meet NOCSAE standards, as specified by the government's solicitation.[67]

Defendants also seek dismissal based on the statute of limitations. Here, plaintiffs allege that defendants submitted

---

[66]        Fourth Amended Complaint, ¶ 48.

[67]        In this sense, this case is distinguishable from U.S. ex rel. Clausen v. Laboratory Corporation of America, Inc., 290 F.3d 1301, 1311 (11th Cir. 2002), in which the United States Court of Appeals for the Eleventh Circuit held that the False Claims Act does not permit a plaintiff "merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted...to the Government."

        Here, in contrast to Clausen, plaintiffs have alleged that defendants submitted false claims to specific schools, and that the government actually made payments on those claims. Moreover, as previously noted, to the extent that the pleading requirements set forth in Clausen require identification of a specific false claim, such requirements have not been adopted by the Third Circuit. See Wilkins, 659 F.3d at 308.

false claims between 2001 and 2008. Plaintiffs' initial complaint was filed October 20, 2006, within six years of defendants' unlawful conduct in 2001[68] and prior to defendants' alleged unlawful conduct, which occurred thereafter.

However, defendants argue that plaintiffs may not recover for false claims submitted prior to May 20, 2004 (which is six years prior to May 20, 2010, the date when plaintiffs filed their third amended complaint *nunc pro tunc* pursuant to leave granted in my May 11, 2010 Order and defendants were added to the within suit). Further, defendants contend that because defendants' employment with the Schutt Corporate Entities ended in 2007, plaintiffs' claims may not be based on conduct, which occurred in 2008.

However, the statute of limitations is an affirmative defense. Fed.R.Civ.P. 8(c). As such, the burden is on defendants to show that the claim is barred. Chester v. Beard, 657 F.Supp.2d 534, 540 (M.D.Pa. 2009) citing Richard Roush, Inc. Profit Sharing Plan v. New England Mutual Life Insurance Co., 311 F.3d 581, 585 (3d Cir. 2002). Therefore, "[i]f the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule

---

[68]        Plaintiffs indicate that their allegations are limited to the six-year statutory time period prior to the filing of their initial complaint, through the period in which defendants ceased operating and directing the activities of Schutt Corporate Entities. (Fourth Amended Complaint, ¶ 26 n.5).

12(b)(6)." Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002).

Additionally, in the context of a claim under the False Claims Act, providing a range of time during which the events giving rise to the claim occurred is sufficient to withstand a motion to dismiss. See U.S. ex rel. Budike v. PECO Energy, 897 F.Supp.2d 300, 318 (E.D.Pa. 2012) (Surrick, J).

Here, plaintiffs allege that defendants submitted false claims between 2001 and 2008. Therefore, even if I were to accept defendants' assertion that plaintiffs may not recover for conduct which occurred prior to May 20, 2004, it is not apparent from the face of plaintiffs' complaint that the statute of limitations provides a basis for dismissal.

Moreover, defendants have not cited any authority to support their contention that plaintiffs' third amended complaint, which added defendants to this suit, does not relate back to their initial complaint, which was filed under seal on October 20, 2006.[69] See Fed.R.Civ.P. 15(c).

Defendants also contend that dismissal is warranted because plaintiffs fail to allege that reconditioning helmets

---

[69] It is not possible to compare the allegations set forth in plaintiffs' third amended complaint with their original complaint because the original complaint remains under seal.

However, the burden is on defendants to establish that the statute of limitations provides a basis for dismissal. Here, at this stage of litigation, they have failed to meet such a burden.

pursuant to NOCSAE standards was a condition of obtaining payment on their allegedly false claims submitted to the government.

As indicated above, in order recover for a false certification submitted to the government, a plaintiff must show that compliance with the regulation, or contract which defendant violated was a "condition of payment" from the government.  See Foglia, 830 F.Supp.2d at 16.

However, here, plaintiffs have essentially alleged just that.  Plaintiffs allege that DoDEA bid requirements required that reconditioned helmets be recertified according to the NOCSAE standards for recertification.[70]  Drawing reasonable inferences in favor of plaintiffs, I cannot conclude at this stage of litigation that if the government knew NOCSAE recertification standards were not being followed, it nevertheless would have paid the Schutt Corporate Entities for its reconditioning services.[71]

---

[70]        Fourth Amended Complaint, ¶ 25.

[71]        Defendants contend that in order to establish that an alleged false claim was a "condition for payment", plaintiffs must cite a specific regulation or contractual provision expressly indicating that compliance by the provider was a condition of payment.

The United States Court of Appeals for the Third Circuit has not addressed whether preconditions for payment "must be expressly set forth by rule, statute, or other source, or whether such preconditions may be implied."  See Foglia, 830 F.Supp.2d at 18 comparing U.S. ex rel. Hutcheson v. Blackstone Medical, Inc., 647 F.3d 377, 388 (1st Cir. 2011) (rule that

(Footnote 71 continued):

Defendants also contend that, contrary to plaintiffs'
allegations, NOCSAE standards do not mandate that reconditioners
test a minimum two percent of each style of helmet from each
customer.  Instead, defendants assert that NOCSAE recommends
that a statistically relevant sample be tested.

However, at this stage of litigation, I am required to
accept plaintiffs' allegations as true.  Therefore, defendants'

(Continuation of footnote 71):

"only express statements in statutes and regulations can establish
preconditions of payment is not set forth in the text of the FCA) with U.S.
ex rel. Milkes v. Straus, 274 F.3d 687, 700 (2nd Cir. 2001) ("implied false
certification is appropriately applied only when the underlying statute or
regulation upon which the plaintiff relies expressly states the provider must
comply in order to be paid.")

          Here, I conclude that, at this stage of litigation, an allegation
citing a specific regulation or contractual term expressly indicating that
NOCSAE certification was a condition of payment is not necessary.  Notably,
this case does not involve alleged regulatory violations where administrative
mechanisms or remedial measures are in place for a government agency to
ensure compliance with various regulations.  See e.g. Wilkins,
659 F.3d at 310, in which the Third Circuit noted that allowing qui tam
claims to proceed for certain Medicare regulations would "short circuit the
very remedial process the Government has established to address non-
compliance with those regulations."

          Here, unlike alleged violations in Wilkins, plaintiffs allege
that they contracted with schools to recondition athletic equipment and that
defendants failed to recondition the equipment they certified to the
government that they had.  I conclude that plaintiffs' allegations that
"prior to the award of any contract" defendants were required to make certain
representations, including that football helmets be recertified according to
NOCSAE standards, is sufficient to permit an inference that "if the
government knew [NOCSAE standards] were not being followed, [the government]
might actually refuse payment."  Foglia, 830 F.Supp.2d at 18 citing U.S. ex
rel. Conner v. Salina Regional Health Center, Inc., 543 F.3d 1211, 1217 (10th
Cir. 2008).

assertions concerning what NOCSAE standards do and do not require do not provide a basis for dismissal.[72]

Accordingly, for all of the foregoing reasons, defendants' motion to dismiss Count I is denied.

## Counts II – IX: State Law False Claims

In addition to the federal False Claims Act, plaintiffs also allege claims under the false claims acts of eight different states and the District of Columbia. Specifically, plaintiffs allege claims on behalf of Delaware (Count II), the District of Columbia (Count III), Florida (Count IV), Illinois (Count V), Indiana (Count VI), Tennessee (Count VII), Virginia (Count VIII), and New York (Count IX).

Defendants' arguments for dismissal of plaintiffs' state-law claims are similar to their arguments in support of

---

[72]    Defendants attach a print-out from the website of the National Athletic Equipment Reconditioning Association, which indicates that NOCSAE recertification protocol provides for testing of a "statistically relevant sample" of football helmets.  (See Exhibit B to the Abeshaus parties' motion to dismiss).

    Although when adjudicating a motion to dismiss, the court ordinarily relies only on the complaint, attached exhibits, and matters of public record, the court may also consider any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss, if plaintiff's claims are based on the document.  Pension Benefit Guaranty Corporation v. White Consolidated Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

    Here, plaintiffs' Fourth Amended Complaint does not refer to NAERA's website; nor can I conclude with certainty that defendants' Exhibit B is undisputedly authentic.  Moreover, even were I to consider the document, it does not contradict plaintiffs' allegations.

dismissal of the federal claim.  As with the FCA, defendants

argue that the state claims are, at least partially, barred by

each state's respective statute of limitations.[73]

However, as with plaintiffs' federal claim, the

statute of limitations is an affirmative defense and the burden

is on defendants to show that the claim is barred.  <u>Chester</u>,

657 F.Supp.2d at 540.  Therefore, like plaintiffs' federal

claim, it is not apparent from the face of plaintiffs' complaint

that dismissal is warranted by each state's respective statute

of limitations.  <u>See</u> <u>Robinson</u>, 313 F.3d at 135.

Likewise, defendants contend that plaintiffs have not

alleged with sufficient particularity that defendants submitted

false claims to each respective state government.

However, like the federal claim, at this stage of

litigation, plaintiffs have provided sufficient allegations to

survive defendants' motion to dismiss.  While, a relator cannot

support an allegation that a defendant violated the laws of

other states based "solely on an alleged violation" of another

state's regulations, <u>Foglia</u>, 830 F.Supp.2d at 22, here,

plaintiffs allege that defendants violated conditions for

payment from each respective state.

---

[73]     Like the federal False Claims Act, Delaware, Washington, D.C.,
Florida, Illinois, Indiana, and Virginia all have six-year statutes of
limitations.  Tennessee has a three-year statute of limitations for claims
under its False Claims Act.  New York has a ten-year statute of limitations.

Plaintiffs allege that the public school districts "mandated in their respective bid packages" that reconditioned helmets comply with NOCSAE certification. Further, plaintiffs' allege that the states indicated that "no bid will be considered for reconditioning of helmets" unless the bidder had helmet testing equipment approved by NOCSAE, and that all NOCSAE approved helmets must be designated with recertification labels.[74] Therefore, I conclude that plaintiffs have alleged with sufficient particularity that defendants violated the state-law false claims acts.

---

[74]     Fourth Amended Complaint, ¶ 27. Defendants contend that plaintiffs' allegation that each state required NOCSAE certification as part of reconditioning helmets is not supported and that plaintiffs cannot group the requirements of each state collectively without more particularized allegations.

     Plaintiffs' allegation concerning each state's respective bid requirements relies in part on a 2009 bid package from the Broward County School District in Florida, which plaintiffs attach to the Fourth Amended Complaint as Exhibit H. Defendants contend that the Broward County bid package does not support plaintiffs' allegation because there is no evidence that the Schutt Corporate Entities were awarded the contract; the bid solicitation was issued in 2009, after defendants ceased working at the Schutt Corporate Entities; and plaintiffs have not provided any evidence that other school districts in addition to Broward County, Florida required NOCSAE certification.

     However, as indicated above, the Third Circuit has never required a plaintiff to identify representative examples of false claims at the pleading stage in order to comply with the requirements of Rule 9(b). See Wilkins, 659 F.3d at 308. Moreover, plaintiffs allege that "all Public School Districts' bid requirements contained substantially the same requirements." (Fourth Amended Complaint, ¶ 27).

     Additionally, like the federal claim, plaintiffs identify the schools which the Schutt Corporate Entities did business with and the price and quantity of helmets it sold in each state on average each year. Therefore, like the federal claim, I conclude that plaintiffs have provided sufficient factual averments concerning defendants' alleged scheme to put

(Footnote 74 continued):

However, defendants also separately seek dismissal of Count II, which asserts a claim under the Delaware False Claims and Reporting Act. Defendants contend that plaintiffs cannot proceed with a claim under Delaware False Claims and Reporting Act because the Delaware Attorney General did not issue a written determination that plaintiffs' claims are supported by substantial evidence.

Like the federal FCA, the Delaware False Claim and Reporting Act provides that a private civil action may be brought on behalf of the state of Delaware. However, under Delaware's act, an action can only proceed if after "an investigation of the factual allegations and legal contentions made in the complaint," the Attorney General has made a written determination "that there is substantial evidence that a violation of the [Delaware False Claims and Reporting Act] has occurred. Del.Code Ann. tit. 6 § 1203(b) (2006).[75]

(Continuation of footnote 74):

defendants' on "notice of the precise misconduct with which [they are] charged" and have complied with Rule 9(b) by employing "alternative means of injecting precision and some measure of substantiation into [their] allegations of fraud". See Underwood v. Genentech, Inc., 720 F.Supp.2d 671, (E.D.Pa. 2010) (Diamond, J.); see also U.S. ex rel. International Brotherhood of Electrical Workers, Local Union 98 v. The Fairfield Company, 2013 U.S.Dist. LEXIS 92590 at **67-69 (E.D.Pa. July 2, 2013) (Stengel, J.).

[75]     Delaware has since amended it false claims act. However, the 2006 version is applicable in this case. See U.S. ex rel. Streck v. Allergan, Inc., 894 F.Supp.2d 584, 603 (E.D.Pa. Jul. 3, 2012) (Robreno, J.).

Plaintiffs do not respond to defendants' contentions regarding dismissal of Count II for failure to obtain a written determination from the Delaware Attorney General. Accordingly, I grant defendants' motion to dismiss Count II as unopposed.[76]

Moreover, were I to consider the merits of defendants' arguments, dismissal of Count II would be warranted. Here, plaintiffs do not allege that the Delaware Attorney General issued a written determination that their claim under the Delaware False Claims and Reporting Act is supported by substantial evidence. Therefore, plaintiffs have failed to state a claim in Count II. <u>See</u> <u>Streck</u>, 894 F.Supp.2d at 603.

Accordingly, defendants' motion to dismiss is granted to the extent it seeks dismissal of Count II. Defendants' motions to dismiss are denied to the extent they seek dismissal of Counts III through IX for failure to state a claim.

### Failure to Join a Necessary Party

In the alternative, defendants contend that even if dismissal of plaintiffs' Fourth Amended Complaint is not

---

[76]     Rule 7.1(c) of the Rules of Civil Procedure for the United States District Court for the Eastern District of Pennsylvania provides in pertinent part that "any party opposing [a] motion shall serve a brief in opposition, together with such answer or other response which may be appropriate.... In the absence of timely response, the motion may be granted as uncontested ...." E.D.Pa.R.Civ.P. 7.1(c). Therefore, if a plaintiff fails to respond to all of the arguments raised in a motion to dismiss, the court may grant the motion to dismiss as uncontested with respect to those arguments. <u>Matthew M. v. William Penn School District</u>, 2002 U.S.Dist. LEXIS 10385 (E.D.Pa. June 11, 2002) (Padova, J.).

warranted under Rule 12(b)(6), it should be dismissed pursuant to Rule 12(b)(7) and Rule 19 because plaintiffs did not join the Schutt Corporate Entities as a party.

Rule 12(b)(7) allows a motion to dismiss to be filed for failure to join a party under Rule 19. Rule 19 sets forth a two-part test. First, a court must determine whether a party is a necessary party and is "required to be joined if feasible". Fed.R.Civ.P. 19(a). If the court determines that the party should be joined but joinder is not feasible, the court moves to the second step to determine whether "in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed.R.Civ.P. 19(b).

When considering whether a party a necessary party, Rule 19(a) provides that "[a] person...must be joined as a party if:

> (A)  in that person's absence, the court cannot accord complete relief among the existing parties; or
>
> (B)  that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i)  as a practical matter impair or impede the person's ability to protect the interest; or
> >
> > (ii)  leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Here, defendants contend that the Schutt Corporate
Entities are necessary parties and that the court cannot afford
complete relief without them.  Defendants contend that they can
be liable only if the trier of fact concludes that the Schutt
Corporate Entities submitted false claims and that therefore,
the Schutt Corporate Entities have an interest in the litigation
that may be impaired if they are not joined.  Defendants further
assert that allowing this litigation to proceed without the
Schutt Corporate Entities would subject defendants to a risk of
additional litigation and inconsistent obligations because the
Schutt Corporate Entities may assert separate claims against
defendants.

However, the fact that defendants may have a claim for
(or be subject to liability for) contribution or indemnification
from the Schutt Corporate Entities does not make them a
necessary party. See Sykes v. Hengel, 220 F.R.D. 593, 596
(S.D.Iowa April 27, 2004), in which the court held that "a
defendant's right to contribution or indemnity from an absent
non-diverse party does not render that absentee indispensable
pursuant to Rule 19."

Moreover, defendants do not explain how proceeding
without the Schutt Corporate Entities might subject them to
inconsistent obligations.  Defendants do not indicate that they

are currently involved in litigation against the Schutt

Corporate Entities.  Therefore, the possibility of defendants

incurring inconsistent obligations is purely speculative.[77]

Therefore, I conclude that the Schutt Corporate

Entities are not necessary parties under Rule 19.  Accordingly,

defendants' motion to dismiss is denied to the extent it seeks

dismissal under Rule 12(b)(7).[78]

---

[77]     Furthermore, an inconsistent obligation is not the same as
inconsistent relief and Rule 19 protects against the former, not the latter.
Sykes, 220 F.R.D. at 596.

     "Inconsistent obligations occur when a party is unable to comply
with one court's order without breaching another court's order concerning the
same incident."  Id. quoting Delgado v. Plaza Las Americas, Inc.,
139 F.3d 1, 3 (1st Cir. 1998).  In contrast, inconsistent adjudications
"occur when a defendant successfully defends a claim in one forum, yet loses
on another claim arising from the same incident in another forum."  Id.

     Here, defendants are not involved in any pending litigation with
the Schutt Corporate Entities, much less identical claims to the claims
asserted against defendants in this dispute, which could result in
inconsistent obligations.

     Moreover, the Schutt Corporate Entities are currently in
bankruptcy proceedings and a plan of liquidation has been confirmed.  In
light of the Schutt Corporate Entities liquidation, it is not an
indispensable party under Federal Rule of Civil Procedure 19(b).  See Lone
Star Industries, Inc. v. Redwine, 757 F.2d 1544 (5th Cir. 1985), in which the
court held that nothing prejudicial to the liquidated corporation, or current
parties could result from judgment in the absence of the liquidated
corporation because it had no assets or interests.

[78]     Even were I to conclude that the Schutt Corporate Entities were
necessary parties under Rule 19(a), dismissal would not be appropriate.  As
indicated above, if the court determines that the party should be joined but
joinder is not feasible, the court must consider whether "in equity and good
conscience, the action should proceed among the existing parties or should be
dismissed."  Fed.R.Civ.P. 19(b).

     Here, joinder of the Schutt Corporate Entities is not feasible
because the Schutt Corporate Entities are in bankruptcy and any proceedings
against them are subject to an automatic stay.  See 11 U.S.C. § 362.
Although the Schutt Corporate Entities cannot be joined, equity and good

(Footnote 78 continued):

-48-

## CONCLUSION

Accordingly, for all of the foregoing reasons, defendants' motion to dismiss is granted to the extent it seeks dismissal of Count II. Defendants' motion to dismiss is denied in all other respects. Defendants shall have until October 23, 2013 to answer Count I and Counts III through IX of plaintiffs' Fourth Amended Complaint.

---

(<u>Continuation of footnote 78</u>):

conscience do not preclude this action from proceeding with the named parties. <u>See</u> <u>Fanning v. Black & Decker, Inc.</u>, 1999 U.S.Dist. LEXIS 3407 at *2 (E.D.Pa. Mar. 18, 1999) (Lowell, J.), in which the court held that severing a bankrupt defendant is proper if the bankrupt defendant is not an indispensable party.